CV 10-5210

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 10 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
LOUIS A. DEL VALLE,

           Plaintiff, KORMAN, J.

- against -

INTERNATIONAL UNION OF OPERATING ENGINEERS, MANN, M.J.
LOCAL UNION 14-14b,
           Defendant.
-------------------------------------------------------------------- x

COMPLAINT

TRIAL BY JURY
DEMANDED

    Plaintiff, Louis A. Del Valle, brings this action for discrimination against his labor union pursuant to Title VII of the Civil Rights Act of 1966, as codified 42 U.S.C. §§2000e et seq. (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166), the Civil Rights Act of 1866 and 1871, 42 U.S.C. §1981, and Title 8 of the Administrative Code of the City of New York, New York City Human Rights Law, to redress discrimination on the basis of plaintiff's race and national origin (Hispanic, Puerto Rican), and retaliation for having engaged in protected activities under Title VII and the NYC Administrative Code.

1. This is a civil rights action for declaratory relief, equitable relief, compensatory and punitive damages and other relief, to redress retaliation and discrimination in violation of Title VII of the Civil Rights Act of 1966, as amended, 42 U.S. U.S.C. §§ 2000e et seq., the Civil Rights Act of 1866 and 1871, 42 U.S.C. §1981, and the New York City Human Rights Law (Title 8 of the Administrative Code of the City of New York).

2. Jurisdiction is specifically conferred upon this Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343, and the doctrine of pendent jurisdiction.

1

3. Venue is properly laid in the Eastern District of New York because a substantial part of the events and omissions giving rise to the claims set forth herein occurred in the Eastern District of New York.

4. Plaintiff timely pursued all applicable administrative remedies.

5. Plaintiff demands a trial by jury in this action.

6. Plaintiff resides in the State of New York, County of Queens.

7. Defendant, International Union of Operating Engineers, Local Union 14-14B ("Local 14" or "Defendant") at all times relevant to this Complaint, has been plaintiff's collective bargaining representative. Defendant maintains its principal place of business at 141-57 Northern Boulevard, Flushing, New York in the County of Queens.

8. Plaintiff, a Hispanic male who was born in Puerto Rico, asserts that his union, Local 14, discriminated against him on the basis of his race and national origin and subjected him to materially adverse actions in retaliation for having filed complaints opposing Defendant's discriminatory practices.

9. Plaintiff timely filed charges with the U.S. Equal Employment Opportunity Commission regarding defendants' discriminatory and retaliatory conduct. Specifically, plaintiff filed charges on or about September 30, 2009 and on or about April 1, 2010.

10. Plaintiff timely commenced this action, within 90 days of his receipt of a right to sue letter from the U.S. Equal Employment Opportunity Commission.

11. Local 14 is a labor organization that represents operating engineers within the five boroughs of the City of New York. As part of its responsibility in procuring labor for contractors who have entered into collective bargaining agreements with Defendant, Local 14 assigns skilled tradesmen or women to building construction sites and other

construction projects. Local 14 is also responsible for assigning and appointing its members to available master mechanic positions.

12. Upon information and belief, after a certain number of Local 14 operating engineers are assigned to a construction project, the contractor is contractually mandated to also retain the services of a Local 14 master mechanic to oversee the operating engineers. The master mechanic serves as a supervisor on the construction project, ensuring compliance with the collective bargaining agreement and satisfactorily work performance by Local 14 members.

13. Plaintiff has been a member of Local 14 since March 5, 1985. Plaintiff initially worked as a heavy equipment operator, but was later considered for the move coveted master mechanic positions. Under the former leadership of Joseph Rizzuto, who served as Business Manager-Financial Secretary of Local 14, plaintiff was designated to serve as Master Mechanic with NAB Construction Company from 1995 through May of 1999. Thereafter, with leadership changes at Local 14, Plaintiff was assigned to master mechanic positions on a significantly less frequent basis until he was no longer assigned any such positions.

14. Upon information and belief, the completely subjective and standardless referral practices of Local 14 have had a disparate impact on qualified Hispanic members, including plaintiff, who are qualified but have not been selected for master mechanic positions.

15. Upon information and belief, under Local 14's new leadership, plaintiff has been subjected to disparate treatment and not assigned to or recommended for any master mechanic positions by Local 14 in the past one and one half years because he is Hispanic.

16. Although it operates within the five boroughs of the ethnically and racially diverse City of New York, Local 14's leadership and membership is overwhelmingly white, non-Hispanic. By its own admission, of its 1,235 active members, 1,065 are white. The entire leadership of Local 14 is white, non-Hispanic. According to Local 14, only 60 members of Local 14 are Hispanic.

17. Upon information and belief, plaintiff is one of at least four Hispanic members of Local 14 who are qualified to serve in the position of master mechanic. During the past one and one half years, none of the master mechanic positions have been offered to Local 14 members who are Hispanic. Upon information and belief, at least 18 white, non-Hispanic Local 14 members, most of whom are substantially less qualified than Plaintiff or not qualified at all, have been assigned to master mechanic positions by Local 14.

18. Plaintiff is a member of good standing with Local 14 and well qualified to serve as master mechanic, as he had previously served in that capacity. Plaintiff worked continuously as a master mechanic, overseeing Local 14 operating engineers, from 1995 until 1999.

19. In addition to having actually served in the position of master mechanic, plaintiff has all the requisite operating licenses and certificates to qualify for the position of master mechanic. Plaintiff, for example, is a licensed hoisted machine operator, a crane operator certified by the New York Department of Labor, and an industrial truck operator in accordance with OSHA regulations. Plaintiff has also been certified by the New York City Fire Department and has received a certificate in Fitness to Operate Air Compressor.

20. On August 29, 2009, Plaintiff asked Local 14 Business Manager Edwin Christian, who is white, non-Hispanic, for an assignment to the open master mechanic position available at

John F. Kennedy Airport. Plaintiff was advised that the position was not available, but he later ascertained that the position was given to a less qualified non-Hispanic member.

21. On September 24, 2009, Plaintiff asked Local 14 Business Agent John Powers, white, non-Hispanic, for an assignment to available master mechanic positions, to no avail. There were several locations where construction work had either begun or was about to begin, leaving openings for the master mechanic position in each respective construction site. In response, Powers advised Plaintiff: "Stay where you are, there is no master mechanic job for you now or in the future."

22. Plaintiff's calls to Business Manager Christian, seeking consideration for a master mechanic position, were not returned.

23. On or about September 30, 2009, Plaintiff filed charges of discrimination against Local 14 with the U.S. Equal Employment Opportunity Commission. Plaintiff alleged, in part, that he was denied the master mechanic positions because he is Hispanic

24. Between 2005 to 2009, plaintiff had served as master mechanic only nine times, all on a short term basis. Thereafter, Plaintiff has not been assigned to any short term or long term master mechanic positions. Instead, plaintiff has been working as an operating engineer, jockeying for any available assignments meted out by Local 14 and effectively denied all opportunities by Local 14 to serve as master mechanic.

25. Upon information and belief, in the past one and one-half years, under Local 14's new leadership, none of the Hispanics who are qualified to serve as master mechanics, including plaintiff, have been assigned by Local 14 to serve in that position.

26. On November 15, 2009, plaintiff spoke with Business Agent Christian and requested appointment to a master mechanic position at the Atlantic Yards in Brooklyn. Christian

denied Plaintiff's request, stating that there had already been a master mechanic on that jobsite. However, as the Atlantic Yards project also entailed the construction of a new stadium, with new contractors, a new master mechanics position should have been available.

27. On March 3, 2010, Plaintiff called Business Manager Christian requesting to speak to him about the Atlantic Yards Stadium master mechanic positions, but Christian never returned Plaintiff's call.

28. Upon information and belief, since September of 2009, approximately 15 to 20 master mechanics have been assigned by Local 14 to various constructions sites. None of the master mechanic positions were given to any of the qualified Hispanic candidates, including Plaintiff.

29. By failing to assign or even consider plaintiff and other qualified Hispanic members for assignments to available master mechanic positions, Local 14 also breached its duty of fair representation to plaintiff and discriminated against plaintiff because of his race and national origin.

30. To the extent Local 14 seeks to defend its actions by relying on the discriminatory selection processes of the contractors with whom it has entered into collective bargaining agreements, Local 14 has breached it duty of fair representation to plaintiff on the basis of his race and national origin. Further, upon information and belief, Local 14 has aided and abetted in, and ratified such discriminatory selection practices by contractors.

31. On or about April 1, 2010, Plaintiff filed a supplemental charge of race discrimination and retaliation against Local 14 with the U.S. Equal Employment Opportunity Commission.

32. On or about May 3, 2010, Plaintiff filed charges against Local 14 with the U.S. National Labor Relations Board alleging that Local 14 had engaged in an unfair labor practice in that it has been operating its hiring hall in a racially discriminatory manner.

33. Defendant has retaliated against Plaintiff because he engaged in protected activities and opposed Local 14's discriminatory practices.

34. Because plaintiff filed his complaints opposing Local 14's discriminatory practices, he has been subjected to a series of materially adverse actions impacting not only his applications for master mechanic positions, but his overall assignments by Local 14. Since he filed his EEOC complaint, Plaintiff for has not been assigned to any of the coveted long term assignments available to Local 14 members.

35. On August 2, 2010, for example, Plaintiff was assigned to work temporarily as an excavator for the Tutor Perini Construction Company at John F. Kennedy Airport. After one day, plaintiff was informed by the Local 14 Master Mechanic assigned to that site, Mark Fettebeni, that he would be working as an excavator on that site to replace an operator who was moved to a more sought after position in the concrete plant. The following day, plaintiff was ordered by the Local 14 master mechanic to move from the excavator and to work on a concrete breaking hydraulic hammer with broken windows and no cooling system. Plaintiff, in effect, was deprived of a month long assignment on the excavator, which was instead given to a white, non-Hispanic Local 14 member. In addition, because he was ordered to operate a machine with broken windows and no cooling system on a day when a heat advisory had been issued, plaintiff sustained heat exhaustion and was taken to the hospital by ambulance.

36. The assignment of Plaintiff to the hydraulic hammer violated the union's by-laws, as it required an illegal shifting of personnel assigned to operate equipment.

37. Upon returning to the work site, Plaintiff produced a note from his physician stating that he was medically able resume his work. After a meeting to discuss his return to work, wherein Plaintiff noted that he believed he was being subjected to retaliation, the Local 14 master mechanic at the site, sarcastically told plaintiff that if he did not like it, he should go and make a complaint with the Court appointed monitor, an attorney appointed to oversee a consent decree to eliminate corruption from Local 14. Plaintiff was laid off that afternoon, sans explanation.

38. Since the filing of his complaints of discrimination with the EEOC, Local 14 has not assigned plaintiff to any long term projects, either as a heavy equipment operator or a master mechanic. For a period of time following the August 2, 2010 incident, plaintiff was not assigned any work. Thereafter, Plaintiff has been reporting to Local 14's hiring hall for daily assignments that are issued on a first come, first serve basis. It is only though his own efforts, by reporting to the hiring hall promptly in the early morning, that plaintiff is assigned any work at all, invariably on a short term basis.

39. In or about September of 2010, Plaintiff requested assignment to the master mechanic positions available at the following projects: New York Police Academy Construction Project in Queens, Delta Terminal at JFK Airport, Brooklyn Bridge, Columbia University.

40. By letter dated October 8, 2010, the President and Business Manager of Local 14, Edwin L. Christian, replied: "At this time, you are hereby advised that you are not in consideration for the position of Master Mechanic at these projects."

41. Defendant has subjected Plaintiff to discrimination because he is Hispanic and has subjected Plaintiff to materially adverse actions in retaliation for his opposition to Local 14's discriminatory practices in violation of 42 U.S.C. 2000e et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, and the New York City Human Rights Law, Title 8 of the New York City Administrative Code. As a result of the unlawful actions of defendants, Plaintiff is now suffering, and will continue to suffer emotional pain, suffering, inconvenience and mental anguish, lost of enjoyment of life and other loses.

42. As a direct result of defendants' unlawful actions, Plaintiff has suffered and will continue to monetary losses, including loss pay and other benefits.

## FIRST CLAIM FOR RELIEF

43. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "41" as if fully set forth herein.

44. Defendant subjected Plaintiff to discrimination because of his race (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

45. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2( c ) it is unlawful for a labor union to *inter alia* discriminate against an individual because of his race.

46. As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer actual damages, including but not limited to lost income, lost future earnings, mental anguish, pain and suffering.

## SECOND CLAIM FOR RELIEF

47. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "46" as if fully set forth herein.

48. Defendant subjected Plaintiff to discrimination because of his national origin (Hispanic, Puerto Rican) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

49. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2( c ) it is unlawful for a labor union to *inter alia* discriminate against any individual because of his national origin.

50. As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer actual damages, including but not limited to lost income, lost future earnings, mental anguish, pain and suffering.

### THIRD CLAIM FOR RELIEF

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "50" as if fully set forth herein.

52. Defendant subjected Plaintiff to retaliation because he opposed defendant's discriminatory practices and filed charges of race discrimination and retaliation with the EEOC in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

53. The anti-retaliation provisions of Title VII, 42 U.S.C. § 2000e et seq., make it unlawful for a labor union to discriminate against a member because has opposed any practice made an unlawful under Title VII or because he has made a charge of discrimination.

54. When Plaintiff filed his complaints charging defendant with discriminating against him because he is Hispanic and alleging that Local 14's hiring hall was operating in a racially discriminatory manner, he opposed [a] practice made an unlawful practice within the meaning of 42 U.S.C. Section 2000e-3(a).

61. As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer actual damages, including but not limited to lost income, lost future earnings, mental anguish, pain and suffering.

## SIXTH CLAIM FOR RELIEF

62. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "61" as if fully set forth herein.

63. Defendant, individually, and/or as aider and abettor, retaliated against Plaintiff in violation of the New York City Human Rights Law, as codified in Title 8 of the Administrative Code of the City of New York, N.Y. City Admin. Code § 8-107.

64. The N.Y. City Admin. Code § 8-107(7) prohibits labor unions from "retaliat [ing] or discriminat [ing] in any matter against any person because such person has (i) opposed any practice forbidden under this chapter, or (ii) ... assisted in any proceeding under this chapter..."

65. As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer actual damages, including but not limited to lost income, lost future earnings, mental anguish, pain and suffering.

## SEVENTH CLAIM FOR RELIEF

66. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "65" as if fully set forth herein.

67. Defendant subjected Plaintiff to discrimination because of his race (Hispanic) in violation of 42 U.S.C. §1981.

68. As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer actual damages, including but not limited to lost income, lost future earnings, mental anguish, pain and suffering.

## EIGHTH CLAIM FOR RELIEF

69. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "68" as if fully set forth herein.

70. Defendant retaliated against Plaintiff in violation of 42 U.S.C. §1981.

71. As a direct and proximate result of Defendant's actions, Plaintiff suffered and continues to suffer actual damages, including but not limited to lost income, lost future earnings, mental anguish, pain and suffering.

WHEREFORE, Plaintiff respectfully prays for judgment in his favor against defendant as follows:

1. Declaring that Defendants' acts complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., 42 U.S.C. §1981, and Title 8 of the Administrative Code of the City of New York.

2. Awarding Plaintiff a money judgment for his damages, including but not limited to, lost income, lost future earnings, lost benefits, lost overtime pay, and other economic damages, shame, humiliation, embarrassment and mental distress.

3. Awarding Plaintiff punitive damages for defendants' willful and wanton disregard of his rights.

4. Awarding Plaintiff costs actually incurred in connection with the bringing of this action and his reasonable attorneys' fees, pursuant to 42 U.S.C. Section 1988 and Title 8 of the NYC Administrative Code.

5. Directing the defendant to assign Plaintiff to an available long term master mechanic position, with full fringe benefits and seniority rights; and

6. Granting such further and additional relief as the Court deems just and proper.

Dated: New York, New York
November 10, 2010

KOUSOULAS & ASSOCIATES P.C.
Attorneys for Plaintiff
48 Wall Street, 25th Floor
New York, New York 10005
212-509-2566
Akousoulas@kalawyers.com

ANTONIA KOUSOULAS (AK8701)